UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KATHLEEN SANCHEZ, | |
| Plaintiff, | CIVIL ACTION NO. 3:23-CV-01321 |
| v. | (MEHALCHICK, J.) |
| JENKINS TOWNSHIP, et al., | |
| Defendants. | |

**MEMORANDUM**

Before the Court is a motion to dismiss the amended complaint filed by Defendants Jenkins Township ("Jenkins") and Christopher Purcell ("Officer Purcell") (collectively, "Defendants"). (Doc. 10). On August 9, 2023, Plaintiff Kathleen Sanchez ("Sanchez") initiated this action by filing a complaint alleging claims against Defendants pursuant to 42 U.S.C. § 1983. (Doc. 1). On November 19, 2023, Sanchez filed the operative amended complaint. (Doc. 8). On December 4, 2023, Defendants filed a motion to dismiss the amended complaint. (Doc. 10). For the following reasons, Defendants' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**. (Doc. 10).

I. **BACKGROUND**

The following factual summary is taken from Sanchez's amended complaint. (Doc. 8). Sanchez has lived on Chestnut Street in Jenkins for over 34 years. (Doc. 8, ¶ 8). For over a year, Sanchez alleges she was unable to pull out of her driveway "without scraping her car against branches," due to the presence of a red vehicle parked across the street. (Doc. 8, ¶ 9). Sanchez believes the red vehicle belongs to someone who either lives at or frequents 44 Mitchell Street in Jenkins. (Doc. 8, ¶ 10). Sanchez "attempted several times to discuss the situation," with the residents of 44 Mitchell Street, however, these discussions often resulted

in yelling and finger pointing. (Doc. 8, ¶¶ 11-13). Despite her requests, the red vehicle's owner refused to stop parking across the street from Sanchez's driveway. (Doc. 8, ¶ 13).

On October 11, 2022, the parking situation escalated when Sanchez parked across from her driveway in the red vehicle's typical spot. (Doc. 8, ¶ 14). According to Sanchez, she did so to put the groceries inside her home with the intention of moving her car back into the driveway once she was finished. (Doc. 8, ¶ 15). In response to Sanchez parking in the red vehicle's typical spot, the residents of 44 Mitchell Street and Sanchez engaged in a "verbal exchange" which resulted in Sanchez moving her car and calling 911. (Doc. 8, ¶¶ 16-17). Officer Purcell responded to the call and subsequently charged Sanchez with harassment pursuant 18 PA. CONS. STAT. § 2709(a)(3) & (4). (Doc. 8, ¶¶ 20-23, at 11). The citation Officer Purcell issued states, "Actor did harass the victim and her family over an ongoing parking problem by use of name calling, calling victim's husband leprechaun after several attempts to work this out." (Doc. 8, at 11). According to the citation, the "victim" of the harassment was Katlyn Malloy-Wolfe, one of the residents at 44 Mitchell Street. (Doc. 8, ¶ 26, at 11).

Sanchez pled not guilty to the crime of harassment before Magisterial District Judge Alexandra Kokura-Kravitz. ("Judge Kokura-Kravitz") (Doc. 8, ¶ 29, at 24). On February 2, 2022, Sanchez appeared for trial; however, Officer Purcell was not present. (Doc. 8, ¶ 32). Instead, Jenkins Police Chief Frank Mudlock ("Chief Mudlock") appeared to prosecute the matter on Officer Purcell's behalf. (Doc. 8, ¶ 32). Judge Kokura-Kravitz continued the matter for sixty days with the understanding that, so long as there were no additional incidents between Sanchez and the residents of 44 Mitchell Street, she would find Sanchez not guilty. (Doc. 8, ¶ 36). On April 23, 2023, Sanchez was found not guilty. (Doc. 8, ¶ 37).

In her amended complaint, Sanchez puts forth the following counts: Count I against Jenkins under 42 U.S.C. § 1983 and Count II against Officer Purcell under 42 U.S.C. § 1983. (Doc. 8, ¶¶ 40-45, 46-48). In Count I, Sanchez alleges that Chief Mudlock's participation in Sanchez's prosecution established an "illegal policy for Jenkins Township." (Doc. 8, ¶¶ 42-44). Sanchez alleges that as a result of this illegal policy, she "suffered constitutional violations and damages." (Doc. 8, ¶ 45). In Count II, Sanchez alleges that Officer Purcell's conduct, "including his charging Ms. Sanchez criminally," violated her First Amendment right to free speech and her Fourteenth Amendment to due process. (Doc. 8, ¶ 47). As a result, Sanchez alleges she suffered "substantial injury and damage." (Doc. 8, ¶ 48). As relief, Sanchez requests damages, the amount of which to be determined at trial, as well as attorneys' fees and costs associated with the action. (Doc. 8, ¶¶ A-E).

On December 4, 2023, Defendants filed a motion to dismiss Sanchez's amended complaint. (Doc. 10). On December 18, 2023, Defendants filed a brief in support of their motion. (Doc. 11). On December 22, 2023, Sanchez filed a brief in opposition. (Doc. 12). On January 5, 2024, Defendants filed a reply brief. (Doc. 13). Accordingly, the motion to dismiss has been fully briefed and is ripe for discussion. (Doc. 10; Doc. 11; Doc. 12; Doc. 13).

**II.   LEGAL STANDARDS**

A. RULE 12(B)(6)

Rule 12(b)(6) authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions which are not entitled to the

3

assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the required elements which make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions…'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1429-30 (3d Cir. 1997)). The court also need not assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. St. Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals*

4

*Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

Additionally, Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Thus, a well-pleaded complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action. There is no requirement that the pleading be specific or probable. *Schuchardt*, 839 F.3d at 347 (*citing Phillips v. County of Allegheny*, 515 F.3d at 224, 233-234 (3d Cir. 2008). Rule 8(a) requires a "showing that 'the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (quoting Fed. R. Civ. P. 8(a)(2)); *see also Phillips*, 515 F.3d at 233 (citing *Twombly*, 550 U.S. at 545).

B. 42 U.S.C. SECTION 1983

Sanchez asserts her constitutional claims under 42 U.S.C. § 1983, which provides a private cause of action for violations of federal constitutional rights. The statute provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or

> causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .
>
> 42 U.S.C. § 1983.

Section 1983 does not create substantive rights, but instead provides remedies for rights established elsewhere. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). To succeed on a § 1983 claim, a plaintiff must demonstrate that the defendant, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). Further, "a defendant in a civil rights action 'must have personal involvement in the alleged wrongs to be liable,' and 'cannot be held responsible for a constitutional violation which he or she neither participated in nor approved.'" *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) (internal citations omitted). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

### III.   DISCUSSION

Arguing for dismissal, Defendants assert that "issuance of a citation for harassment that prohibits conduct connected with a parking space dispute is a lawful exercise of a state actor's police powers and is an inappropriate basis for a First Amendment challenge." (Doc. 11, at 8). Defendants also aver "the mere failure of the police chief to withdraw an otherwise valid harassment citation fails to show wrongful inaction sufficient to state a claim against [Jenkins]." (Doc. 11, at 13). In response, Sanchez avers that she has properly pled a First Amendment claim because she was prosecuted because she called a man

6

leprechaun and that because Chief Mudlock should have realized an individual cannot be prosecuted for First Amendment protected speech, his personal actions amounted to a failure to control Officer Purcell and thus constitute "official actions of Jenkins Township." (Doc. 12, at 12).

### A. COUNT I: SANCHEZ'S CLAIMS AGAINST JENKINS

Sanchez asserts her constitutional claim against Jenkins pursuant to 42 U.S.C. § 1983 and under a theory of municipality liability. (Doc. 8, ¶¶ 40-45). Defendants argue Sanchez has failed to state a claim for municipal liability under 42 U.S.C. § 1983 because the amended complaint fails to allege any policy, custom, or practice Jenkins has sustained that give rise to her First Amendment claim. (Doc. 11, at 13-16). Sanchez argues that as Chief of Police, Chief Mudlock's actions and omissions serve as Jenkins' policy. (Doc. 12, at 10-11).

A municipal body or other local governmental unit is a "person" subject to suit under 42 U.S.C. § 1983. The Supreme Court has held that:

> Congress *did* intend municipalities and other local government units to be included among those persons to whom §1983 applies. Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy, statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Moreover, although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other § 1983 'person,' by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels.

*Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690-91 (1978).

However, it has also been repeatedly held that a municipality may not be subjected to Section 1983 liability on a theory of *respondeat superior. See e.g. City of Canton v. Harris*, 489

7

U.S. 378, 392 (1989); *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121-22 (1988); *Pembaur v. Cincinnati*, 475 U.S. 469, 478-79 (1986). Rather, "a plaintiff seeking to impose liability on a municipality under § 1983 [is required] to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Board of Cnty. Comm'rs of Bryan Cnty, Okla. v. Brown,* 520 U.S. 397, 403 (1997); *Beck v. City of Pittsburgh,* 89 F.3d 966, 971 (3d Cir. 1996). The United States Supreme Court elaborated on the showing required for municipal liability under Section 1983, stating that:

> it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.
>
> *Bryan Cnty.*, 520 U.S. at 403.

The United States Court of Appeals for the Third Circuit has held that a municipality can be held liable under Section 1983 "only when 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Andrews v. City of Phila.,* 895 F.2d at 1480 (citing *Monell,* 436 U.S. at 694). To impose Section 1983 liability, the Third Circuit added in *Andrews* that there are two ways in which a governmental policy or custom is established:

> Policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 481 (1986). A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanent and well settled' as to virtually constitute law. *Monell,* 436 U.S. at 690.
>
> *Andrews*, 895 F.2d at 1480.

For the purpose of municipality liability, citing to 53 PA. STAT. ANN. § 66902 the Third Circuit and this Court have suggested that "a township Police Chief is not a policymaker." *Santiago v. Warminster Twp.*, 629 F.3d 121, n.11 (3d Cir. 2010); *see Dubas v. Olyphant Police Dep't*, No. 3:11CV1402, 2012 WL 1378694, at *5 (M.D. Pa. Apr. 20, 2012) (The court. . . finds that borough police chiefs do not have final policy making authority under Pennsylvania law."). "Moreover the Supreme Court has forbidden courts from 'assuming that municipal policymaking authority lies somewhere other than where the applicable law purports to put it.'" *Santiago*, 629 F.3d at n.11 (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 125 (1988)).   Thus, Chief Mudlock cannot be considered a policymaker for the purpose of Sanchez's claims against Jenkins. *Santiago*, 629 F.3d at n.11. However, even if Chief Mudlock could be considered a policymaker for the purpose of this action, a review of the amended complaint reveals Sanchez has failed to adequately allege that his actions established a municipal policy or custom. (Doc. 8). The Court is not convinced that by attending to Sanchez's charges Mudlock went as far as to make an official policy. Whereas Sanchez alleges, "[a]s Chief of Jenkins Township Police Department, Chief Mudlock was the highest law enforcement policymaker in Jenkins Township [and therefore] [h]is actions and/or omissions constituted official policy of Jenkins Township," she does not allege any "action he took that could fairly be said to be a policy." (Doc. 8, ¶ 33); *Santiago*, 629 F.3d at 135. The allegation that Chief Mudlock "did not withdraw the criminal charge against Ms. Sanchez, despite his authority to do so," and instead "pursued the illegal criminal prosecution of Ms. Sanchez for calling someone a 'leprechaun,'" "does not imply the existence of an official policy in violation of Sanchez's constitutional rights." *See McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009) (a claimant "must identify a

9

custom or policy, and specify what exactly that custom or policy was"); *see also Santiago*, 629 F.3d at 135. Accordingly, the claims against Jenkins are to be **DISMISSED** and Defendants' motion to dismiss Count I is **GRANTED**.

### B. Count II: Sanchez's Claims Against Officer Purcell

Sanchez brings her constitutional claims against Officer Purcell pursuant to 42 U. S. C. § 1983. Sanchez submits that Officer Purcell's application of Pennsylvania's anti-harassment statute, Section 2709 of the Pennsylvania Crimes Code ("Section 2709"), violated her free speech and due process rights.[1] (Doc. 8, ¶¶ 46-48; Doc. 12, at 5). Officer Purcell charged Sanchez with violating Section 2709(3) & (4). (Doc. 8, at 11). According to Sanchez, she was "criminally charged for calling a man a leprechaun." (Doc. 12, at 5). Defendants contend that Officer Purcell issued Sanchez a citation because of her conduct related to an ongoing parking dispute with her neighbors, not her speech. (Doc. 11, at 9). Additionally, Defendants submit that because the Pennsylvania Supreme Court has upheld challenges to Pennsylvania's anti-harassment legislation, Officer Purcell's issuance of a citation to regulate harassment does not amount to a First Amendment claim. (Doc. 11, at 12).

The First Amendment dictates that "Congress shall make no law. . . abridging the freedom of speech." U.S. Const. amend. I. "[A]s a general matter, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Ashcroft v. ACLU*, 535 U.S. 564, 573, (2002). That said, the Supreme Court has carved out exceptions to the absolute right to free speech for "certain

---

[1] Sanchez clarifies that she does not intend to raise a facial attack to the constitutionality of Pennsylvania's harassment statute. (Doc. 12, at 5 n.2).

10

well-defined and narrowly limited classes of speech," including, "the lewd and obscene, the profane, the libelous, and . . . 'fighting' words—those which by their very utterance inflict injury or tend to incite an immediate breach of the peace." *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571-72 (1942). Aside from these carve outs, "in public debate [] citizens must tolerate insulting, and even outrageous, speech in order to provide adequate 'breathing space' to the freedoms protected by the First Amendment." *Boos v. Barry*, 485 U.S. 312, 322 (1988).

To survive a constitutional challenge, legislation implicating speech cannot be vague or overbroad. *Cf. Sypniewski v. Warren Hills Reg'l Bd. of Educ.*, 307 F.3d 243, 259, 266 (3d Cir. 2002). A statute or regulation must fail for vagueness if it "forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning." *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926). "A law may be invalidated facially as 'overbroad' if 'a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" *Free Speech Coal., Inc. v. Att'y Gen. United States*, 974 F.3d 408 (3d Cir. 2020) (quoting *United States v. Stevens*, 559 U.S. 460, 473, (2010) (quotation marks omitted))).

Section 2709(a)(3) & (4) provide a "person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person: engages in a course of conduct or repeatedly commits acts which serve no legitimate purpose;" and "communicates to or about such other person any lewd, lascivious, threatening or obscene words, language, drawings or caricatures[.]" The statute defines "course of conduct" as "[a] pattern of actions composed of more than one act over a period of time, however short, evidencing a continuity of conduct." 18 PA. CONS. STAT. § 2709(f). Pennsylvania courts have held that a

11

defendant's "intent to harass may be inferred from the totality of the circumstances" and "[a] course of conduct ... can be based on words alone." *Commonwealth v. Lutes*, 2002 PA Super 51, 793 A.2d 949, 961 (2002) (citations omitted); *see Commonwealth v. Harmer*, No. 2986 EDA 2016, 2017 WL 2992391, at *3 (Pa. Super. Ct. July 14, 2017).

The intent of Pennsylvania's anti-harassment statute is "to prevent repeated communications of a non-legitimate nature, made with specific intent to harass the listener." *Commonwealth v. Papp*, 2023 PA Super 209, 305 A.3d 62, 79 (2023). However, "[w]hen laws against harassment attempt to regulate oral or written expression [], however detestable the views expressed may be, [the Court] cannot turn a blind eye to the First Amendment implications. 'Where pure expression is involved,' anti-discrimination law 'steers into the territory of the First Amendment.'" *DeJohn v. Temple Univ.*, 537 F.3d 301 (3d Cir. 2008) (quoting *Saxe v. State Coll. Area Sch. Dist.*, 240 F.3d 200, 209 (3d Cir. 2001) (internal quotations omitted)). Pennsylvania's anti-harassment statute accounts for this limitation explicitly, stating: "[Section 2709] shall not apply to constitutionally protected activity." 18 PA. CONS. STAT. § 2709(e).

Accordingly, individuals charged with harassment may argue their prosecution violates the First Amendment. *See Commonwealth v. Collins*, 2022 PA Super 195, 286 A.3d 767 (2022), *reargument denied* (Jan. 19, 2023) (challenging conviction under Section 2709(a)(3) on First Amendment grounds); *see also Papp*, 305 A.3d at 77-79; *see also Commonwealth v. Hanner*, 303 A.3d 752 (Pa. Super. Ct. 2023) (challenging conviction under Section 2709(a)(4) on First Amendment grounds); *see also Commonwealth v. Spone*, 2023 PA Super 238, 305 A.3d 602 (2023) (challenging conviction under Section 2709(a)(5) on First Amendment grounds). While "[t]here is a dearth of case law interpreting what constitutes

'constitutionally protected activity' as to avoid prosecution for harassment," the Supreme Court of Pennsylvania has held that while Pennsylvania's anti-harassment statute may implicate speech, it is neither facially overbroad nor vague. *Com. v. Hendrickson*, 724 A.2d 315, 318-19 (1999). The statute is not facially overbroad because it intends to regulate harassing conduct, not pure speech. *Hendrickson*, 724 A.2d at 318; *see Harmer*, 2017 WL 2992391, at *3. The statute is not facially vague because "when read in context, [the terms of the statute] are sufficiently specific that it is understood what is prohibited[.]" *Hendrickson*, 724 A.2d at 319.

Consequently, as Sanchez does in this case, challengers of Section 2709 prosecutions must argue the statute is unconstitutional "as applied" to them. (Doc. 12, at n.2); *cf. Hendrickson*, 724 A.2d at 319. The Pennsylvania Superior Court has explained the distinction between facial and an as applied constitutional challenges to criminal statutes as follows:

> A facial attack tests a law's constitutionality based on its text alone and does not consider the facts or circumstances of a particular case. An as-applied attack, in contrast, does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right. A criminal defendant may seek to vacate his conviction by demonstrating a law's facial or as-applied unconstitutionality.

*Commonwealth v. Bradley*, 2020 PA Super 109, 232 A.3d 747, 757 (2020) (quoting *Commonwealth v. Brown*, 2011 PA Super 47, 26 A.3d 485, 493 (2011)). Thus, the relevant inquiry here to determine whether Section 2709 has been unconstitutionally applied must shift from a review of the statutory language to a fact-dependent, totality of the circumstances analysis. *Bradley*, 232 A.3d at 757.

In this case, based on the amended complaint and the citation attached as an exhibit, it is unclear whether Sanchez was cited solely for her speech or for harassing conduct that

accompanied and/or preceded that day's "name calling," particularly Sanchez calling "the victim's husband a leprechaun."[2] (Doc. 8, ¶¶ 24, 25, at 11). Looking solely at what is provided in the pleadings, Sanchez's speech constitutes protected speech because name calling, including calling someone a leprechaun, does not alone fall into any of the Supreme Court's carve outs for protected speech. *See Johnson v. Bradford*, No. CV 16-205, 2017 WL 7163940, at *4 (W.D. Pa. Nov. 30, 2017), *report and recommendation adopted*, No. 2:16CV205, 2018 WL 621286 (W.D. Pa. Jan. 30, 2018) ("it is clear that [Plaintiff's] name calling, standing alone, does not constitute fighting words and thus is protected speech"); *cf. Sypniewski v. Warren Hills Reg'l Bd. of Educ.*, 307 F.3d 243 (3d Cir. 2002) ("much harassment by name calling (understood broadly) is protected."). Sanchez's speech cannot be said to be "fighting words," because while her statements may have been "unpleasant, insulting, and possibly unwise,' it is not clear whether the statements were intended to cause a fight. *Johnson v. Campbell*, 332 F.3d 199, 213 (3d Cir. 2003).

In her amended complaint, Sanchez alleges her harassment charge was predicated on her protected speech, specifically, her "'calling victim's husband leprechaun.'" (Doc. 8, ¶ 24). The citation Officer Purcell issued only provides that Sanchez "did harass the victim and her family over an ongoing parking problem by use of name calling, calling victim's husband Leprechaun and after several attempts to work this out." (Doc. 8, at 11). While the State does have an interest in curbing harassing conduct, it cannot constitutionally curb

---

[2] In addition to the facts pled in Sanchez's amended complaint, this Court may "also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." *Evans v. Wetzel*, No. 3:15-CV-0190, 2016 WL 1242341, at *1 (M.D. Pa. March 30, 2016) (citing *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994)). Accordingly, the Court takes judicial notice of the exhibits expressly incorporated by reference in Sanchez's amended complaint.

protected speech. *See Hendrickson,* 555 Pa. 277, 724 A.2d 315 (1999) ("The government has a legitimate interest in preventing the harassment of individuals. [Pennsylvania's anti-harassment] statute is not directed at the content of speech and is unrelated to the suppression of free expression. Rather, the statute focuses on the manner and means of communication and proscribes communications made with an intent to harass."). The statute itself forbids this use of its provisions. 18 PA. CONS. STAT. § 2709(e). However, in reviewing Officer Purcell's citation, it is unclear if what charged Sanchez for was engaging in protected speech or something more. (Doc. 8, at 11).

At this early stage of litigation, the Court finds that Sanchez has sufficiently alleged facts, which, if true, plausibly allege Officer Purcell violated her constitutional rights. (Doc. 8). Accordingly, Defendants' motion to dismiss Count II against Officer Purcell is **DENIED**.

## IV.   LEAVE TO AMEND

The Third Circuit Court of Appeals requires district courts to grant leave to amend in civil rights cases when a curative amendment is conceivable. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007); *Grayson,* 293 F.3d at 108. Here, Sanchez has already filed an amended complaint and she does not request further amendment in her brief in opposition to Defendants' motion to dismiss. Accordingly, the Court will not grant leave to amend, and this matter shall proceed on the amended complaint. *See Rothermel v. Dauphin Cty., Pennsylvania,* No. 1:16-CV-1669, 2018 WL 4680093, at *14 (M.D. Pa. Sept. 28, 2018) (denying leave to amend where plaintiffs did not request further amendment in Rule 12 briefing).

V. <u>CONCLUSION</u>

Based on the foregoing, Defendants' motion to dismiss is **GRANTED IN PART** as to Count I of the amended complaint against Jenkins and **DENIED IN PART** as to Count II of the amended complaint against Officer Purcell. (Doc. 10). Count I against Jenkins will be **DISMISSED**. (Doc. 8). **An appropriate Order follows.**

**Dated: April 30, 2024**                                          *s/Karoline Mehalchick*
                                                                                    **KAROLINE MEHALCHICK**
                                                                                    **Chief United States Magistrate Judge**