UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KATHLEEN SANCHEZ,<br><br>      Plaintiff,<br><br>v.<br><br>JENKINS TOWNSHIP, et al.,<br><br>      Defendants. | CIVIL ACTION NO. 3:23-CV-01321<br><br>(MEHALCHICK, J.) |

**MEMORANDUM**

Before the Court are two motions for summary judgment filed by Plaintiff Kathleen Sanchez ("Sanchez") and Defendants Jenkins Township ("Jenkins") and Christopher Purcell ("Officer Purcell") (collectively, "Defendants"), respectively. (Doc. 33; Doc. 36). On August 9, 2023, Sanchez initiated this action by filing a complaint alleging claims against Defendants pursuant to 42 U.S.C. § 1983. (Doc. 1). On November 19, 2023, Sanchez filed the operative amended complaint. (Doc. 8). For the following reasons, Sanchez's motion for summary judgment is **DENIED**. (Doc. 33). Defendants' motion for summary judgment is **GRANTED**. (Doc. 36).

**I. BACKGROUND**

The following factual summary is taken from the parties' statement of facts and exhibits attached thereto.[1] This case arises out of a parking dispute between Sanchez and her neighbor, Katlyn Malloy ("Malloy"), and Malloy's family. The record reflects that Sanchez and Malloy live on a narrow two-lane street where parking has historically been

---

[1] On April 15, 2025, beyond any relevant deadline connected to the instant motion, Defendants filed an additional statement of facts with exhibits. (Doc. 44). The Court will not consider this additional material.

"horrendous." (Doc. 34, ¶¶ 5-6, 9; Doc. 34-1, ¶ 9; Doc. 34-2, at 28, 31; Doc. 36-3, at 189; Doc. 38, ¶ 52). On or around October 11, 2022, both Malloy and Sanchez reported the ongoing parking dispute to Jenkins police. (Doc. 34, ¶ 1; Doc. 34-1, at 6-7; Doc. 34-2, at 47; Doc. 36, at 147-48; Doc. 38, ¶ 24). Malloy reported that Sanchez had continuously harassed and "heckled" Malloy and her family over the parking situation in their neighborhood and had called her husband names, including leprechaun. (Doc. 34, ¶ 2; Doc. 34-1, at 6-7, 15; Doc. 36, at 142; Doc. 38, ¶¶ 9, 17, 19). According to Sanchez, after yelling ensued over the parking dispute, she called police because she became fearful that "there were men there yelling." (Doc. 34-2, at 47). Specifically, the parties were arguing over the fact that Sanchez was parked in the spot where Malloy's parents usually park, allegedly to more easily unload her groceries. (Doc. 34, ¶¶ 6-11; Doc. 34-1, at 45; Doc. 34-3, at 33; Doc. 38, ¶ 33). While Sanchez was parked legally, Malloy testified that she called the police because she believed Sanchez had parked there out of spite. (Doc. 34, ¶ 12; Doc. 34-3, at 33; Doc. 38, ¶ 34). Malloy stated:

> Why would anybody in their right mind who has a driveway that is right next to their home park across the street and walk farther to carry their groceries in their home. It was only being done out of spite, and I know that. There is no other answer for that.
>
> (Doc. 34-3, at 33).

Officer Purcell responded to the calls. (Doc. 34, ¶¶ 14-16; Doc. 34-1, at 11; Doc. 38, ¶ 25). Officer Purcell testified that he first encountered Sanchez and that he "tried to talk to her," but she insisted that the Malloys should not be able to park in the disputed spot, despite their legal right to do so. (Doc. 36-3, at 189). He also testified that Malloy complained that she and her family "were tired of being harassed," at which point he offered to file a harassment citation. (Doc. 36-3, at 11-12; Doc. 38, ¶¶ 25, 27). Officer Purcell subsequently

filed a citation against Ms. Sanchez for two counts of harassment under 18 Pa. C.S. § 2709 (a)(3) and (a)(4). (Doc. 34-1, ¶ 17; Doc. 34-1, at 19; Doc. 38, ¶ 29). In the "Nature of Offense" section of the citation, Officer Purcell wrote: "[a]ctor did harass the victim and her family over an ongoing parking problem by use of name calling, calling victim's husband leprechaun and after several attempts to work this out." (Doc. 8, at 11; Doc. 34, ¶ 19; Doc. 38, ¶¶ 30, 52).

Trial on the charges against Sanchez was held on January 19, 2023, and continued on February 2, 2023. (Doc. 8, ¶¶ 29-36, at 14; Doc. 34, ¶ 23). On April 13, 2023, Sanchez was found "not guilty" of the charges against her. (Doc. 8, ¶ 37, at 14-15; Doc. 34, ¶ 24).

Sanchez filed the operative amended complaint on November 19, 2023. (Doc. 8). Following the disposition of a motion to dismiss filed by Defendants, the sole remaining claim in the amended complaint is Count II, a Section 1983 claim against Officer Purcell for violation of Sanchez's First Amendment rights. (Doc. 8, ¶¶ 46-48). On February 21, 2025, and February 28, 2025, Sanchez and Defendants respectively filed motions for summary judgment on Count II, along with the requisite accompanying documents. (Doc. 33; Doc. 34; Doc. 35; Doc. 36; Doc. 37; Doc. 38). Both motions are now fully briefed and ready for disposition.

II.     **LEGAL STANDARDS**

   A.     MOTION FOR SUMMARY JUDGMENT

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" if the evidence "is such that a reasonable jury could return

3

a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994). However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." *See* M.D. Pa. L.R. 56.1.

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 278 (3d Cir. 2000). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249.

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must go beyond the pleadings with affidavits or declarations, answers to interrogatories, or the like to demonstrate specific material facts which give rise to

4

a genuine issue. Fed. R. Civ. P. 56(c); *Celotex,* 477 U.S. at 324. The non-movant must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323. Furthermore, mere conclusory allegations and self-serving testimony, whether made in the complaint or a sworn statement, cannot be used to obtain or avoid summary judgment when uncorroborated and contradicted by other evidence of record. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *see also Thomas v. Delaware State Univ.*, 626 F. App'x 384, 389 n.6 (3d Cir. 2015) (not precedential) ("[U]nsupported deposition testimony, which is contradicted by the record, is insufficient to defeat summary judgment."); *Nat'l Labor Rel. Bd. v. FES*, 301 F.3d 83, 95 (3d Cir. 2002) ("[The plaintiff's] testimony . . . amounts to an unsupported, conclusory assertion, which we have held is inadequate to satisfy the movant's burden of proof on summary judgment.").

    B.  42 U.S.C. Section 1983

Sanchez asserts her First Amendment Retaliation claim under 42 U.S.C. § 1983, which provides a private cause of action for violations of federal constitutional rights. The statute provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

Section 1983 does not create substantive rights, but instead provides remedies for rights established elsewhere. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). To succeed on a § 1983 claim, a plaintiff must demonstrate that the defendant, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). Further, "a defendant in a civil rights action 'must have personal involvement in the alleged wrongs to be liable,' and 'cannot be held responsible for a constitutional violation which he or she neither participated in nor approved.'" *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) (internal citations omitted). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

### III. DISCUSSION

In her last remaining Count, Sanchez alleges Officer Purcell retaliated against her for engaging in protected speech in violation of the First Amendment. (Doc. 8, ¶¶ 46-48). A Section 1983 First Amendment retaliation claim requires a showing of: "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights [also known as an adverse act], and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006). When the retaliation claim is based on a criminal prosecution, a showing of probable cause generally defeats the plaintiff's claim. *See Falcone v. Dickstein*, 92 F.4th 193, 210 (3d Cir. 2024); *see also L. v. Borough of Lansdale*, No. CV 23-1339, 2024 WL 1078203, at *6 n.9 (E.D. Pa. Mar. 12, 2024); *see also Korman v. Pennsylvania State Police Honesdale Barracks*, No. 3:21-CV-01516, 2023 WL 2224437, at *10 (M.D. Pa. Feb.

24, 2023) ("When a retaliation claim is based on a criminal prosecution, a plaintiff must also plead and prove lack of probable cause.").

Here, the parties dispute whether the record establishes Sanchez was cited for harassment on the basis of her protected speech. (Doc. 35, at 6-7; Doc. 37, at 2). Because no reasonable jurors could decide so, Sanchez's motion for summary judgment will be **DENIED**. (Doc. 33). Because Sanchez is unable to meet her burden as it relates to her sole remaining claim, Defendants' motion for summary judgment will be **GRANTED**. (Doc. 36).

The First Amendment does not provide protection in situations where a statute forbids behaviors conducted with a specific intent to harass. *Yoast v. Pottstown Borough*, 437 F. Supp. 3d 403, 419 (E.D. Pa. 2020), *aff'd*, No. 22-1960, 2023 WL 4418213 (3d Cir. July 10, 2023); *see also Haagensen v. Pennsylvania State Police*, 490 F. App'x 447, 452–53 (3d Cir. 2012). Sanchez was charged with violations of 18 Pa. C.S. § 2709 (a)(3) and (a)(4). In relevant part, 18 Pa. C.S. § 2709 provides:

> (a) OFFENSE DEFINED. — A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person:
>
> (3) engages in a course of conduct or repeatedly commits acts which serve no legitimate purpose;
>
> (4) communicates to or about such other person any lewd, lascivious, threatening or obscene words, language, drawings or caricatures[.]

18 Pa. C.S. § 2709 (a)(3) and (a)(4).[2]

As courts in Pennsylvania have recognized, the statute is not intended to control the content of speech or suppress free expression, but rather, to curb a certain manner of speech

---

[2] Notably, Sanchez does not, at this time, challenge the constitutionality of these statutes. (Doc. 35, at 8 n.2).

that is intended to harass. *See Commonwealth v. Papp*, 2023 PA Super 209, 305 A.3d 62, 74-76 (2023), *appeal denied*, 316 A.3d 4 (Pa. 2024), *and cert. denied sub nom. Papp v. Pennsylvania*, 145 S. Ct. 438 (2024). Courts have also recognized that repeated communications that are intended to be insulting may fall outside the ambit of First Amendment protection if intended to harass and shame a victim. *Cf. Commonwealth v. Collins*, 2022 PA Super 195, 286 A.3d 767, 776-77 (2022) (finding the dissemination of insulting posters and handouts to fall outside First Amendment protections in part because the speech "was simply intended to shame and provoke [the victim] and direct the ire of the public on him."). Thus, words alone are sufficient to sustain a harassment charge if used repeatedly "with specific intent to harass." *See Yoast v. Pottstown Borough*, 437 F. Supp. 3d 403 (E.D. Pa. 2020) ("because [Plaintiff] was charged not for protected speech 'but rather for [repeatedly sending text messages] with the specific intent to harass,' his conduct was not protected by the First Amendment as a matter of law"), *aff'd*, No. 22-1960, 2023 WL 4418213 (3d Cir. July 10, 2023). Under the statute, "[a]n intent to harass may be inferred from the totality of the circumstances." *Commonwealth v. Lutes*, 793 A.2d 949, 961 (Pa. Super. 2002); *see also Com. v. Cox*, 2013 PA Super 221, 72 A.3d 719, 721 (2013).

      Here, the record is clear that Officer Purcell pursued harassment charges against Sanchez in response to repeated complaints of harassment from Malloy and her family and not because Sanchez called Malloy's husband a leprechaun. The record also reflects that Sanchez engaged in repeated behaviors intended to harass Malloy and her family in response to their on-going parking dispute. The record contains no evidence that Officer Purcell charged Sanchez merely for engaging in protected speech.

      In his citation, Officer Purcell describes the nature of Sanchez's offense as follows:

8

> Actor did harass the victim [and] her family over an ongoing parking problem by use of name calling, calling victim's husband leprechaun and after several attempts to work this out. [sic].
>
> (Doc. 36-3, at 221).

In his Incident Report, Officer Purcell further explains the on-going harassment Malloy reported that served as the basis for his citation. (Doc. 36-3, at 219). Therein, Officer Purcell includes the following allegations of harassment: yelling at the family, cursing at the family and Malloy's adolescent son, and calling Malloy's husband a leprechaun. (Doc. 36-3, at 219). Officer Purcell also includes that upon arriving at the scene, he tried to speak with Sanchez about the allegations, however, she "became agitated and abusive" towards him. (Doc. 36-3, at 219). The Incident Report reflects that Officer Purcell subsequently told Sanchez she would be cited for harassment if her harassing behavior were to continue. (Doc. 36-3, at 219). Sanchez was subsequently cited with harassment under the relevant statutes. (Doc. 36-3, at 219-21); 18 Pa. C.S. § 2709 (a)(3) and (a)(4).

Testimony from the parties also supports that Sanchez was charged with harassment not as a result of engaging in protected speech, but because she acted in a way forbidden by Pennsylvania's harassment statute. See 18 Pa. C.S. § 2709 (a)(3) and (a)(4). During her deposition, Malloy explained in greater detail the ways in which she believes Sanchez harassed her and her family. According to Malloy, Sanchez would engage in "constant heckling" of Malloy's husband and would "yell" at her parents. (Doc. 34-3, at 19, 24). According to Malloy, this behavior had gone on for years. (Doc. 36-3, at 142). Malloy stated "Sanchez was always yelling. It didn't matter how often we came outside. She was always yelling." (Doc. 36-3, at 146). Malloy testified that she wanted to press charges against Sanchez so that Sanchez would stop, providing that the first time she reported Sanchez's behavior, she

told the police chief "I just want my family to be left alone." (Doc. 34-3, at 40; Doc. 36-3, at 148).

Officer Purcell also testified to Sanchez's "continuous harassment." (Doc. 34-1, at 21). According to Officer Purcell's recollection of events, he spoke with Malloy and her family, and they "indicated that they were tired of being harassed," to which he responded harassment charges could be filed. (Doc. 34-1, at 11-12). During his interactions with Sanchez, Officer Purcell reported and testified that Sanchez became verbally abusive towards him. (Doc. 36-2, at 196-97). When asked why he cited Sanchez for harassment, Officer Purcell stated his reason was "ongoing and continuous harassment."[3] (Doc. 36-3, at 200).

Even Sanchez's testimony undermines her retaliation claim. Under oath, she admits that she and Malloy had an on-going parking dispute. (Doc. 34-2, at 21, 25; Doc. 36-3, at 39). Sanchez also did not deny that she yelled at Malloy and her family. Sanchez also testified that she knew Malloy had complained to the police about her behavior on more than one occasion, as "there was an incident [a few months before the October 11, 2022 incident] where a policewoman passed by my house. . . she stopped, and she proceeded to tell me that they could park anywhere they want[.]" (Doc. 34-2, at 64).

The record does not contain any evidence that Officer Purcell was inspired to retaliate against Sanchez for the use of her protected speech. While "[t]here is no categorical 'harassment exception' to the First Amendment's free speech clause," "non-expressive,

---

[3] Officer Purcell's accompanying officer, Officer Tracy Schultz, also reported to the October 11, 2022 incident. (Doc. 36-3, at 247-48). Officer Schultz testified that after speaking with her, Sanchez became "irate" and visibly more upset. (Doc. 36-3, at 247). Officer Schultz was familiar with the Malloy-Sanchez harassment situation because she had previously responded to Malloy reporting Sanchez. (Doc. 36-3, at 248). Her testimony further supports Defendants' version of events.

physically harassing conduct" is not constitutionally protected. *Saxe v. State Coll. Area Sch. Dist.*, 240 F.3d 200, 204 (3d Cir. 2001); *United States v. Yung*, 37 F.4th 70, 78 (3d Cir. 2022). Here, Sanchez does not dispute the statute under which she was charged is constitutional. (Doc. 35, at 8 n.2). Here, the record contains ample and undeniable support that Officer Purcell issued his citations in response to Sanchez's pattern of name calling, yelling, and heckling aimed at Malloy and her family. At the very least, the record reflects that Officer Purcell had probable cause to cite Sanchez with harassment, which alone is sufficient to defeat her claim. *See Hartman v. Moore*, 547 U.S. 250, 265 (2006); *see also Korman*, 2023 WL 2224437, at *10). As no reasonable juror could conclude otherwise, Sanchez's motion for summary judgment is properly **DENIED**. (Doc. 33). Defendants' motion for summary judgment is **GRANTED**. (Doc. 36).

## IV. CONCLUSION

Based on the foregoing, Sanchez's motion for summary judgment is **DENIED**. (Doc. 33). Defendants' motion for summary judgment is **GRANTED**. (Doc. 36). The Clerk of Court is **DIRECTED** to **CLOSE** this case.

An appropriate Order follows.

Dated: April 23, 2025                                  *s/ Karoline Mehalchick*
                                                                              **KAROLINE MEHALCHICK**
                                                                              **United States District Judge**